## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH KEELING, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-3442 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| LAKE COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Joseph Keeling was detained at the Lake County Jail as a pretrial detainee. A nurse diagnosed him with "recurrent hypertensive crisis," a condition associated with high blood pressure. She determined that Keeling needed a lower bunk because of his condition. And she issued an order memorializing that requirement.

But Keeling was not assigned to a lower bunk. Correctional Officer Doe ignored the nurse's order and assigned him to a top bunk. Keeling protested, and Officer Doe quipped that the jail "was not a hotel."

On his first night in the upper bunk, Keeling fell ill. He suffered a grand mal seizure, and received emergency treatment at a hospital. Keeling then retained counsel and filed suit against the (unidentified) Sheriff of Lake County, Officer Doe, and Lake County. Defendants, in turn, moved to dismiss.

For the reasons explained below, the motion to dismiss is granted in part, and denied in part. The Court will grant leave to amend.

**Background**

Joseph Keeling entered the Lake County Jail as a pretrial detainee on June 8, 2022. *See* Cplt., at ¶ 6 (Dckt. No. 1). A registered nurse, Nurse Gregorio, conducted medical screening when he arrived. *Id.* at ¶ 7.

Nurse Gregorio determined that Keeling had "recurrent hypertensive crisis," a condition that impacts circulatory function. *Id.* at ¶¶ 7–8. (This Court had to look it up.)

The National Institute of Health describes that condition as follows. "Hypertensive urgency is a marked elevation in blood pressure without evidence of target organ damage, such as pulmonary edema, cardiac ischemia, neurologic deficits, or acute renal failure." *See* William D. Alley & Eddie L. Copelin II, *Hypertensive Urgency*, NIH: National Library of Medicine (Sept. 4, 2023), https://www.ncbi.nlm.nih.gov/books/NBK513351/.

The condition poses serious long-term risks. "Patients with hypertensive urgency are at increased risk for long-term morbidity and mortality. The one-year mortality for those experiencing an episode of hypertensive urgency is approximately 9%. Untreated hypertension is notorious for increasing mortality risk and is often described as a silent killer." *Id.*

To that end, untreated hypertension can lead to serious conditions such as stroke, heart failure, renal failure, dementia, and aneurysms. *Id.* "The treatment for hypertensive urgency is to ensure better long-term blood pressure control. Emphasizing the need for compliance with medications and close primary care follow-up is paramount." *Id.*

Based on that diagnosis, Nurse Gregorio concluded that Keeling needed to be housed in a bottom bunk. *See* Cplt., at ¶ 7 (Dckt. No. 1). She issued an order for a lower bunk in a form called "Identification of Special Needs." *Id.* at ¶ 9.

An unknown Lake County correctional officer, Officer Doe, was responsible for assigning Keeling's bunk. *Id.* at ¶ 10. Officer Doe knew that Keeling needed a lower bunk based on the Identification of Special Needs form. *Id.* at ¶ 11. Even so, Officer Doe assigned Keeling to a top bunk. *Id.* at ¶ 12.

Keeling objected to the assignment, but Officer Doe refused to move him. *Id.* at ¶ 13. Officer Doe explained that "the Jail was not a hotel." *Id.* (Keeling undoubtedly knew that already.)

That night, Keeling became ill in the top bunk. *Id.* at ¶ 16. He had a grand mal seizure. *Id.* Before long, he received emergency treatment at Vista East Hospital. *Id.*

As an aside, the complaint is not entirely clear on the relationship between the bunk assignment and the seizure. The complaint alleges that "[a]s a result of defendant Doe's conduct, plaintiff became ill while assigned to the top bunk and had a grand mal seizure." *Id.*

Maybe the complaint is alleging a causal relationship between getting in the top bunk and having a seizure. That is, maybe the theory is that forcing Keeling to climb up to the top bunk somehow precipitated the seizure. Maybe the exertion of the climb caused a seizure.

Under another reading, maybe being in the top bunk did not cause the seizure, but exacerbated the injury. Maybe Keeling suffered a seizure while in the top bunk, and thus fell and suffered an injury of some kind. Or maybe it's something else.

That said, a plaintiff doesn't have to flesh out a causation theory or a damages theory in a complaint. So, for now, the point is simply that Keeling was supposed to be in a bottom bunk, but instead he was assigned a top bunk, and then he had a seizure.

After receiving treatment at the hospital, Keeling returned to Lake County Jail. *Id.* at ¶ 17. But he didn't stay there for long. He was transferred to McHenry County Jail the very next day, on June 9, 2022. *Id.* at ¶ 18.

Keeling entered McHenry County Jail without records showing that he had recurrent hypertensive crisis and had suffered a grand mal seizure a day earlier. *Id.* at ¶ 19. He stayed there for roughly two months, until early August. *Id.* at ¶ 20.

At McHenry County Jail, Keeling experienced nervousness, anxiety, restlessness, sweating, heat intolerance, tremors, weight loss, palpitations, and tachycardia. *Id.* at ¶ 21. Those symptoms were symptoms of recurrent hypertensive crisis. *Id.* at ¶ 23.

McHenry healthcare providers misdiagnosed Keeling as experiencing side effects of detoxification. *Id.* at ¶ 22. They did not know that Nurse Gregorio had diagnosed Keeling with recurrent hypertensive crisis. *Id.* at ¶ 23. They also did not know that Keeling had suffered a grand mal seizure at Lake County Jail. *Id.*

Keeling later sued the Sheriff of Lake County, Officer Doe, and Lake County, with the assistance of counsel. The complaint spans only five pages, equal to the number of letters in the words "short" and "plain." *See* Fed. R. Civ. P. 8(a)(2).

Shorter is often better, but not always. At some point, saying less is less. After all, a complaint must "state[] a claim," which necessarily means that the complaint must give the defendants fair notice of what the "claim" is. *See* Fed. R. Civ. P. 8(a). A complaint must reveal the "claim" and "show[] that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

The complaint at hand does not contain separate counts, or headings. It throws all of the allegations in the same stewpot, and the stew doesn't have a lot of structure. But by the look of things, the claims arise under (1) section 202 of the Americans with Disabilities Act, 42 U.S.C.

§ 12132; (2) section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); (3) section 1983, 42 U.S.C. § 1983; and (4) Illinois common law. *See* Cplt., at ¶ 1 (Dckt. No. 1).

Keeling brought his ADA and Rehabilitation Act claims against the Sheriff of Lake County. *Id.* at ¶ 3. He also sued the Sheriff under *respondeat superior* for the state law claim, and as the potential indemnitor of Officer Doe on the section 1983 claim. *Id.*

The complaint does not reveal whether Keeling is suing the Sheriff in an individual or official capacity (or both). The Court assumes that Keeling is bringing official capacity claims (only) against the Sheriff, not individual capacity claims, given that the ADA and the Rehabilitation Act create liability for entities.[1]

Keeling sued Officer Doe under section 1983. *Id.* at 5 (the "WHEREFORE" paragraph). Keeling also sued Lake County as an indemnitor. *Id.* at ¶ 4.

Defendants filed a motion to dismiss all claims. *See* Mtn. to Dismiss (Dckt. No. 9).

---

[1] "Only public entities are subject to Title II [of the ADA] . . . and . . . such an entity can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 610 (2015). Individual capacity claims are also not permitted under the Rehabilitation Act. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303,* 783 F.3d 634, 644 (7th Cir. 2015). "The only proper defendant for ADA and Rehabilitation Act claims in the carceral context is the relevant governmental department or agency or its director, acting in his or her official capacity." *Smith v. Mendrick*, 2021 WL 4318081, at *2 (N.D. Ill. 2021) (cleaned up); *see also Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 & n.2 (7th Cir. 2012). The Sheriff is the "official overseeing operations" at the jail, so he is a proper defendant for Keeling's ADA and Rehabilitation Act claims. *See, e.g.*, *Smith*, 2021 WL 4318081, at *2 (concluding that Sheriff was "the only proper defendant" against whom plaintiff could bring ADA and Rehabilitation Act claims); *Hildreth v. Cook Cnty.*, 2010 WL 1656810, at *2 (N.D. Ill. 2010) ("By naming the Sheriff and Executive Director Godinez in their official capacities [for ADA claim], Hildreth is in effect alleging a claim against the 'public entity.'"); *Johnson v. Clark Cnty. Sheriff*, 2022 WL 2306880, at *2 (S.D. Ind. 2022) (dismissing ADA and Rehabilitation Act claims against Sheriff in his individual capacity but allowing claims under ADA and Rehabilitation Act to proceed against Sheriff in his official capacity). To the extent that the complaint purported to bring individual capacity claims against the Sheriff under the ADA or the Rehabilitation Act, they are dismissed.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

The Court will begin by addressing the claims under the ADA and the Rehabilitation Act. Then, the Court will address the section 1983 claim, and will end with the claim under Illinois common law.

Before diving in, the Court makes one overarching observation. The complaint generated unnecessary confusion by including a bunch of allegations, without separately delineating the claims. The complaint lacks separate counts. It contains 26 paragraphs, and then comes to a screeching halt. A complaint should not be pleading pudding, lacking structure. *See* Oxford Dictionary of Quotations by Subject 193 (2d ed. 2010) (quoting Winston Churchill) ("Take away that pudding – it has no theme.").

A complaint must contain a "short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 10(b) ("A party must state its claims . . . ."); Fed. R. Civ. P.

6

12(b)(6) (authorizing the defense of a "failure to state a claim"). If the reader isn't sure what, exactly, the "claim" is, then the complaint hasn't stuck the landing. It's hard to see how a complaint "state[s] a claim" if a defendant doesn't know what the claim is, and who it is against. *See* Fed. R. Civ. P. 12(b)(6).

One could debate whether the Federal Rules expressly require a complaint to separately delineate each of the claims in separate counts. But the winds blow in that direction. Rule 10(b) "promote[s] clarity" by encouraging a "separate count or defense" for "each claim" that is "founded on a separate transaction or occurrence." *See* Fed. R. Civ. P. 10(b). It's hard to see why there is a lesser need for clarity when the claims involve the same transaction or occurrence. If anything, the need for clarity may be greater. It might be less obvious what the different claims are on the same set of facts.

Rule 12(e) is suggestive, too. That rule authorizes courts to require a "more definite statement" in a pleading when it is "so vague or ambiguous that the party cannot reasonably prepare a response." *See* Fed. R. Civ. P. 12(e). If a defendant doesn't know what the claim is, then it's hard to prepare a response. *See* Fed. R. Civ. P. 8(b)(1)(A) (requiring a defendant to state its defenses "to each claim asserted against it"). Imagine brainstorming affirmative defenses when you aren't sure what the claim is. A defendant should have a clear view of the target before taking aim.

And then there's Rule 1, which directs courts to interpret the Federal Rules to secure the "just, speedy, and inexpensive" completion of each case. *See* Fed. R. Civ. P. 1. If a defendant isn't sure what a plaintiff is claiming, it creates unfairness, confusion, uncertainty, costs, and delay. Nothing good comes from it.

If in doubt, the default rule should be clarity, not confusion. "Separate counts are required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims. The objective of this requirement is clarity in pleading; therefore the requirement is not strictly enforced when violation causes no uncertainty." *See* 2 James Wm. Moore *et al.*, Moore's Federal Practice § 10.03[2][a] (3d ed. 2023); *see also Three D Dep'ts, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) ("The failure to present [] claims in separate counts has resulted in unclear allegations and imprecise memoranda."); *Williams v. Chicago Transit Auth.*, 2017 WL 4467456, at *5 (N.D. Ill. 2017) (dismissing a claim introduced in "three unlabeled and unnumbered paragraphs at the end of the complaint," and noting the "highly unclear manner in which [plaintiff] presented this claim").

Much is gained by articulating the claims in the complaint, by count. It helps to avoid unfair surprise to the defendant. It promotes targeted discovery, and helps to avoid delays. And in multi-defendant cases, it prevents confusion about which claims are pending against which defendants.

Expressing the claims in separate counts takes away the opportunity for gamesmanship, too. Claims shouldn't be able to pop out of nowhere. A complaint should not have shape-shifting qualities, with a meaning that can change in the blink of the eye of the pleader.

Nothing is lost by pinning down the claims, either. If a plaintiff later decides that he wants to amend, the Federal Rules pave an open avenue for changing gears. *See* Fed. R. Civ. P. 15. So a plaintiff shouldn't be too worried about getting pinned down and boxed out. A plaintiff will have to put his cards on the table before trial, anyway.

Separate counts are a lot easier to understand and digest than a mish-mosh of allegations. Going forward, if Keeling amends the complaint, he must separate the claims in a way that makes it clear what, exactly, he is claiming against which defendant.

## I.      The ADA & the Rehabilitation Act

As the Court reads it, Keeling brought claims under the ADA and the Rehabilitation Act against the Sheriff of Lake County (only) in an official capacity. *See* Cplt., at ¶ 3 (Dckt. No. 1). By the look of things, Keeling did not bring claims under those two federal statutes against Officer Doe or against Lake County.

To bring a claim under section 202 of the ADA, a plaintiff must allege "that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Similarly, to bring a claim under section 504 of the Rehabilitation Act, a plaintiff must allege "two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of his disability." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019).

The Sheriff musters a cursory challenge to the claims, on notice pleading grounds. The argument boils down to a single paragraph. In his view, Keeling "fails to state what claim he is asserting against each defendant." *See* Defs.' Mtn. to Dismiss, at 6–7 (Dckt. No. 9).

This Court can see room for uncertainty about whether the complaint is advancing claims under the two federal statutes against Officer Doe and Lake County. But there isn't much uncertainty on that question when it comes to the Sheriff. The complaint squarely alleges that

"Defendant Sheriff of Lake County is the appropriate defendant on plaintiff's ADA and RA claims." *See* Cplt., at ¶ 3 (Dckt. No. 1).

Notice pleading isn't the world's highest hurdle. And here, the Court concludes that the complaint does enough to state a claim and give notice. The story is simple: Keeling had a disability, the Sheriff failed to accommodate him, and Keeling suffered an injury as a result.

That's enough to sketch out a claim, albeit in rough terms. It is unlikely that the Sheriff is stumped about what the case is about. If the Sheriff wants more details, he can press for them during discovery.

The Sheriff does not advance any other argument. So, for now, the ADA and Rehabilitation Act claims can roll forward.

## II.    Section 1983

Next, Defendants challenge the claim under section 1983. *See* Cplt., at ¶ 1 (Dckt. No. 1). By the look of things, the complaint appears to bring a section 1983 claim based on a violation of the ADA and the Rehabilitation Act. If so, that theory is a non-starter.

The ADA and the Rehabilitation Act independently create causes of action. A plaintiff cannot bring a claim under section 1983 for violating those two statutes, because it adds an extra layer of statutory complexity. A more direct route is wide open – a plaintiff can simply allege a claim under those two statutes.

There is no need to bring a section 1983 claim about violating the ADA or the Rehabilitation Act when a plaintiff can simply bring a claim under the ADA or the Rehabilitation Act. There is no need for statutory piggy-backing.

A claim under section 1983 requires a violation of a federal right, but it cannot merely replicate a cause of action that exists under some other statute. That's statutory double-dipping.

So, to the extent that the complaint purported to bring a section 1983 claim based on a violation of the ADA and the Rehabilitation Act, the section 1983 claim is dismissed. *See, e.g.*, *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016) ("The Rehabilitation Act and the Americans with Disabilities Act . . . specify in detail who may be sued for damages, and using § 1983 to override the limits of those statutory lists is unwarranted."); *Bos. v. Dart*, 2015 WL 4638044, at *4 (N.D. Ill. 2015) (opining that plaintiff cannot use section 1983 as a mechanism to bring ADA and Rehabilitation Act claims); *Silk v. City of Chicago*, 1996 WL 312074, at *19 (N.D. Ill. 1996) ("conclud[ing] that the comprehensive enforcement schemes adopted by Congress in the ADA and the Rehabilitation Act of 1973 preclude[d] [plaintiff] from seeking to enforce a violation of either statute through 42 U.S.C. section 1983"); *Tate v. Dart*, 2019 WL 1200740, at *4 (N.D. Ill. 2019) (dismissing count because plaintiff "did not employ § 1983 to bring a claim under the Constitution," but "instead employs the statute [*i.e.*, section 1983] to bring a claim under the ADA"). In effect, the Court is cutting out the statutory middleman.

That said, a claim under section 1983 must be tethered to a violation of a federal right. Section 1983 is not an independent cause of action, meaning that it has no substantive heft. Section 1983 is a vehicle – it is a ticket to ride into the federal courthouse and bring a claim about a violation of some *other* right. *See Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979); *Narducci v. Moore*, 572 F.3d 313, 319 (7th Cir. 2009).

Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). A claim under section 1983 must rest on a violation of some other federal right. Section 1983 cannot stand on its own two feet.

Keeling contends that his section 1983 claim is separate from his ADA and Rehabilitation Act claims. *See* Pl.'s Resp. to Mtn. to Dismiss, at 4–7 (Dckt. No. 14). Maybe so. But if so, the complaint does not seem to allege a violation of any other federal right.

To be sure, a complaint does not need to pin down a precise legal theory. *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561 (7th Cir. 2011). But a complaint must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted).

Put differently, a complaint does not need to lay down a legal theory. But a complaint must do more than invoke section 1983, and then leave the reader wondering what the underlying federal right is. That's hide-the-ball, hide-the-claim.

And on that front, the section 1983 claim falls short. Keeling does not point to any substantive violation of federal law, apart from the ADA and the Rehabilitation Act. And in fact, Keeling says that those two statutes do not form the basis of his section 1983 claim. *See* Pl.'s Resp. to Mtn. to Dismiss, at 4–7 (Dckt. No. 14). So, Defendants – and the Court – are left scratching their heads, wondering what the substantive legal right is.

Keeling believes that his claim is "identical" to the claim in *Bolling v. Carter*, 819 F.3d 1035 (7th Cir. 2016). *Bolling* involved a deliberate indifference claim under the Fourteenth Amendment, based on a bunk assignment at Cook County Jail.

But there is a glaring problem. No such claim exists in the complaint. Under the Federal Rules, a claim must appear in a "pleading," meaning a complaint. *See* Fed. R. Civ. P. 7, 8. A "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," among other things. *See* Fed. R. Civ. P. 8(a)(2). A

12

party cannot amend a complaint in a response brief. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal.") (cleaned up).

The punchline is simple. If Keeling wants to bring a deliberate indifference claim, then he needs to plead a deliberate indifference claim in the complaint.

As things stand, the complaint does not state a claim under section 1983. It does not allege a violation of any federal law, except the ADA and the Rehabilitation Act, so it is duplicative and unnecessary. For that reason, the section 1983 claim is dismissed.

But the Court will grant leave to amend. A deliberate indifference claim would require an amendment to the complaint, because it does not appear in the complaint.

**III.    Illinois Common Law**

Finally, Keeling alleges a violation of "Illinois common law." *See* Cplt., at ¶ 1 (Dckt. No. 1). But beyond that, the complaint gets a little fuzzy.

From the face of the complaint, Keeling seems to contend that Officer Doe and the Sheriff committed medical malpractice. Paragraph 25 reads: "Under common law principles of causation that have been recognized by the Illinois Supreme Court, defendant Doe and defendant Sheriff of Lake County are responsible for the aggravation of the injuries plaintiff received at the Lake County Jail that were caused by *medical malpractice* while plaintiff was a detainee at the McHenry County Jail." *Id.* at ¶ 25 (emphasis added).

In his brief, Keeling says that his "complaint does not advance a state law medical malpractice claim." *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 9 (Dckt. No. 14). If so, then the complaint's reference to "medical malpractice" is more than a little confusing. The notion that

13

the complaint "does not advance a state law medical malpractice claim" is difficult to square with the allegation in the complaint that Keeling suffered injuries "caused by medical malpractice." *Id.*; Cplt., at ¶ 25 (Dckt. No. 1).[2]

Maybe the phrase "medical malpractice" ties to Keeling's time as a "detainee at the McHenry County Jail," and not to the "injuries plaintiff received at the Lake County Jail." *See* Cplt., at ¶ 25. Or maybe not. Once again, the sketchiness of the complaint generates confusion and uncertainty.

The sentence might mean that the medical staff committed medical malpractice at Lake County Jail, and that Keeling aggravated those injuries at McHenry County Jail. Under that reading, the injury took place at Lake County (due to medical malpractice), and Keeling later aggravated that injury at McHenry County.

Or maybe it's the opposite. Maybe the complaint is saying the medical staff at the McHenry County Jail committed medical malpractice when they aggravated injuries suffered at Lake County Jail. Under that reading, the injury took place at Lake County, and the aggravation took place at McHenry County (due to medical malpractice).

Maybe Keeling didn't mean to bring a medical malpractice claim against Lake County because he *agrees* with the diagnosis of the nurse. That is, maybe the theory is that the nurse got it right, but the officer got it wrong when he refused the instruction to give Keeling a lower bunk.

---

[2] As an aside, the complaint is more than a little confusing in the sentence in question: "defendant Doe and defendant Sheriff of Lake County are responsible for the aggravation of the injuries plaintiff received at the Lake County Jail that were caused by medical malpractice while plaintiff was a detainee at the McHenry County Jail." *See* Cplt., at ¶ 25 (Dckt. No. 1). The Court assumes that that "medical malpractice" refers to the conduct by the Lake County Jail, not the McHenry County Jail. By the look of things, Plaintiff is alleging that he suffered an injury caused by medical malpractice at the Lake County Jail, and that he aggravated those injuries at the McHenry County Jail. Plaintiff would do well to clear things up.

After all, the complaint alleges that the nurse "correctly" diagnosed Keeling as having recurrent hypertensive crisis. *See* Cplt., at ¶ 7 (Dckt. No. 1).

If that's the theory, then maybe medical malpractice wouldn't fit this case. The problem would be the failure by the *non*-medical staff to follow the directives of the *medical* staff.

Instead, Keeling says his common law claim is for "willful and wanton negligence." *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 3 (Dckt. No. 14). The complaint does use the words "willful and wanton." It states that "Defendant Doe acted in a willful and wanton manner in refusing to follow the health care provider's order to assign plaintiff to a bottom bunk." *See* Cplt., at ¶ 15 (Dckt. No. 1).

But the complaint does not mention "negligence," except in the earlier paragraph where it discussed medical malpractice.

Notice pleading doesn't require much, but it *does* require fair notice. *See Twombly*, 550 U.S. at 555. If you asked 100 people to read the complaint and say what state law claim Keeling was pursuing, hardly anyone would say "willful and wanton negligence." That is not fair notice.

True, Keeling's response brief explains that his common law claim is for willful and wanton negligence. But the *complaint* must state the claim, not the response brief. *See* Fed. R. Civ. P. 8(a)(1).

And in any event, a vague reference to "Illinois common law" does not cut it. That's not much better than reserving the right to get imaginative down the road and reveal the claim later, which isn't a thing. Defendants and the Court are left grasping at straws to make sense of the allegations. Defendants cannot prepare an answer – including affirmative defenses – without knowing the nature of the claim after reading the complaint.

Therefore, the Court dismisses any Illinois state law claims. However, the Court will give Keeling a chance to pin down any common law claims in an amended complaint.

One final note. By the sound of things, Keeling did not intend to bring a medical malpractice claim, despite some loose phraseology in the complaint. Even so, if Keeling later changes his mind, he should know that alleging medical malpractice is not an easy lift.

Bringing a medical malpractice claim is a higher hurdle than bringing other types of claims. Under Illinois law, a plaintiff cannot simply allege in a complaint that a defendant committed medical malpractice, and then leave it at that. If Keeling wants to bring a medical malpractice claim, he will need to meet certain procedural requirements (at some point).

Illinois law requires a plaintiff to file an affidavit in any suit in which the plaintiff "seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." *See* 735 Ill. Comp. Stat. Ann. 5/2-622(a). "This requirement applies to malpractice litigation in federal court because § 5/2-622 is a substantive condition of liability." *Young v. United States*, 942 F.3d 349, 350 (7th Cir. 2019).

"Specifically, the plaintiff must file an affidavit (1) avowing the claim is reasonable and meritorious based on a written health-care professional's report; (2) attesting the statute of limitations prevented the plaintiff from obtaining a health-care professional's affidavit and requesting an additional 90 days to file a health-care professional's report; or (3) affirming plaintiff requested the relevant medical documents, but the defendants failed to make the requested documents available within 60 days of the request, thus defeating the plaintiff's ability to seek a health professional's expert opinion." *Walsh v. Cheruku*, 2016 IL App (4th) 160194-U, ¶ 22.

In Illinois court, a plaintiff is required to attach the affidavit to the complaint itself. *See* 735 Ill. Comp. Stat. Ann. 5/2-622(a). But in federal court, that timing restriction does not apply. *See Young*, 942 F.3d at 351 (holding that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622."). However, a federal court can grant a defendant's motion for summary judgment because the plaintiff failed to supply the affidavit and report. *Id.*

In sum, the Court dismisses any state law claims that Keeling brings but with leave to amend. If Keeling wants to bring claims about medical malpractice, he must satisfy the applicable procedural requirements.

### Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss the complaint. Plaintiff is granted leave to amend within 21 days of this ruling.


Date:   January 18, 2024

Steven C. Seeger
United States District Judge

17